HAWTHORNE, Justice.
 

 The defendant, Alfred Sidney Barton, charged in a bill of indictment with the crime of aggravated battery, was tried, convicted, and sentenced to serve a term of three years at hard labor in the Louisiana State Penitentiary. From the conviction and sentence he has appealed to this court.
 

 In the court below, defendant reserved 13 bills of exception, but has abandoned in brief and in argument before this court all except Bills Nos. 5, 6, 7, 8, 11, and 12.
 

 
 *823
 
 Bills of Exception Nos. 5, .6, and 8.
 

 Counsel for defendant moved for the sequestration of witnesses, which motion was granted, and these bills were reserved to the ruling of the court exempting from' such order the witnesses Captain Rivera, a medical officer; Major McCormick, an investigating officer, and Mr. Roland Bass and Sergeant Sol Goldstein, both peace officers.
 

 The trial judge’s per curiam to each of these bills reads as follows :
 

 “The defendant moved for sequestration of the witnesses in the case and the Court granted the motion, excluding peace officers who held commissions in the Army, medical officers, and peace officers who held commissions in the State. None of these witnesses testified to any facts except such as were brought out by their investigation. The exclusion of the witnesses from the rule clearly is within the discretion of the trial Court and by permitting these witnesses to remain in the Court Room, the defendant could not have been injured in any way.”
 

 Article 371 of the Code of Criminal Procedure provides that:
 

 “The judge may, at any stage of the trial, order the sequestration of the witnesses. As soon as such order shall have been given it shall be the duty of the sheriff -to take charge of the witnesses and to remove them to a place where they shall not be able to see or hear any of the proceedings'taking place in court. Nor shall there be, while they shall be sequestered, any communication between them and others or between them and any witness who shall have testified. Any disregard of these provisions by a witness shall disqualify him from testifying and shall subject him to punishment for contempt; provided, that the judge may in all cases, in his discretion, permit any witness to testify * *
 

 The rule that the ordering or refusing to order sequestration of witnesses is within the sound discretion of the trial cou'rt is well settled in this state. State v. Daniels, 122 La. 261, 47 So. 599; State v. High, 122 La. 521, 47 So. 878; State v. Bates, 140 La. 833, 74 So. 165; State v. Hardy, 142 La. 1061, 78 So. 116; State v. Constanza, 157 La. 411, 102 So. 507.
 

 The record in this case does not show the nature of the testimony of these witnesses or to what facts they testified, nor is their testimony in the record. However, the trial judge in his per curiam states that none of these witnesses testified to any fact except such as were brought out by his investigation. In the absence of any showing that the ruling complained of was arbitrary and unreasonable, the exercise of the trial court’s discretion in excluding these witnesses from the order of sequestration is beyond the control of the appellate court.
 

 Counsel for defendant for reversal rely on the case of State v. Carter, 206 La. 181, 19 So.2d 41, 45, decided by this court on June 26, 1944. In that case the defendant was charged with the attempted murder of two deputy sheriffs, and, while these two> were sequestered on motion of defendant, the court refused to apply the rule to three other deputy sheriffs and district attorney’s
 
 *825
 
 investigators, although, counsel for defendant before trial apprised the judge of the fact that these witnesses would be used against the accused and would testify to purported verbal admissions said to have been made by him, and further objected to these witnesses’ testifying in chief and in rebuttal. The trial judge overruled defendant’s objection to the exclusion of these witnesses from the rule on the ground that he had the discretion to permit them to remain in the courtroom. In that case the trial judge did not assign any reason for overruling defendant’s motion for sequestration, but simply stated that it was within his discretion to do so.
 

 In the case under consideration, however, our learned brother below said in his per curiam that none of the witnesses whom he excluded from the rule testified to any facts except such as were brought out by his investigation.
 

 It is also true in the case here under consideration that the record does not disclose whether any objection was made to these witnesses’ testifying in chief or in rebuttal, nor do we know to what facts they actually testified except as shown by the trial judge’s per curiam, and the record does not show that, at any time before the trial began, counsel for defendant apprised the court of any fact to which these witnesses would testify.
 

 In a per curiam by this court in the Carter case we stated: “The sole question involved in the case is whether the judge abused his discretion in permitting the three deputies and the investigator to remain in the courtroom.” And, in reversing the court below, this court found that under the facts in that case the trial judge had abused his discretion, and that his permitting the witnesses to remain in the courtroom and testify over defendant’s objection was prejudicial. However, this court said, in setting aside the conviction and sentence in that case, that it had no intention to, nor did it, overrule the previous cases announcing the general rule stated hereinabove.
 

 We are therefore of the opinion that, from the record as made up in the case at bar, the bills in question do not show any abuse of the trial judge’s discretion and are therefore without merit.
 

 In the case presently before us, tne per curiam of the trial court states that it excluded from the order of sequestration of witnesses peace officers and medical officers who held commissions in the Army and peace officers who had' commissions from the State. In this connection, we think it proper to reiterate what was said in the Carter case, as follows:
 

 “We do not think that under the provisions of Article 371 of the Code of Criminal Procedure district judges have the right to make a rule of court that all court officers are exempt from the order of sequestration of witnesses regardless of the importance of the witness’ testimony in the case. If this were true, then the trial judges, by making such a rule of court, could, to a great extent, nullify the provisions of the above article and, in certain instances, deny the defendant a fair and impartial trial. We reiterate, the article does not give a judge an absolute and unreviewable discretion but one that must be exercised in such
 
 *827
 
 .a way as not to deprive the accused of his right to a fair and impartial trial.”
 

 Bill of Exception No. 7.
 

 . The district attorney in his opening statement read from a written statement allegedly made by a Mr. Strother, and referred to it in connection with what occurred on .the night of the alleged crime. Counsel for defendant objected to this on the ground that it was not proper evidence and was hearsay, as the witness was present to testify, and that the reading from the statement to the jury before the trial of the case was prejudicial. This objection was overruled by the court, and counsel reserved this bill.
 

 The trial judge’s per curiam on this bill reads as follows:
 

 “This bill was taken to the opening statement of the District Attorney. The District Attorney in his opening statement said ■that he would introduce the testimony of a prospective witness as to what occurred at the time of the alleged striking. The Court instructed the Jury that no hearsay evidence would be admitted and that the Jury would be properly instructed when the testimony was offered. The statement of the District Attorney could not have been prejudicial .and, as a matter of fact, the statement made by the witness Strother was actually Used in .the cross-examination of Strother.”
 

 Under the provisions of Article 333 ■of the Code of Criminal Procedure, it is made the mandatory duty of the district attorney in all cases triable by jury to make an opening statement to the jury, explaining the nature of the charge against the accused and the evidence by which he expects to establish the same. State v. Ricks, 170 La. 507, 128 So. 293; State v. Nahoum, 172 La. 83, 133 So. 370; State v. Ducre, 173 La. 438, 137 So. 745; State v. Silsby, 176 La. 727, 146 So. 684; State v. Elmore, 177 La. 877, 149 So. 507; State v. Garrity, 178 La. 541, 152 So. 77; State v. Bishop, 179 La. 378, 154 So. 30; State v. Sharbino, 194 La. 709, 194 So. 756.
 

 It is to be noted that in the per curiam to this bill the trial judge states that he instructed the jury that no hearsay evidence would be admitted, and that the jury would be properly instructed when the testimony was offered. This being so, we are unable to see, and it has not been called to our attention, how the rights of the defendant were violated. The scope and extent of the di'itrict attorney’s opening statement are within the control of the trial judge, in the exercise of a wise discretion, and convictions will not be set aside for error therein unless the rights of the defendant were plainly violated. State v. Ricks, supra; State v. Nahoum, supra; State v. Sharbino, supra.
 

 In the case of State v. Ricks, cited supra, this court quoted with approval from the case of People v. Van Zile, 73 Hun 534, 26 N.Y.S. 390, 393, as follows [170 La. 507, 128 So. 294]:
 

 “It is to be observed, preliminarily, that there is no legal rule for the measurement of an opening [statement], either in a criminal or civil action. It is the legitimate office and purpose of an opening in a criminal action to give the charge against the accused, and the evidence to be presented by
 
 *829
 
 the public prosecutor to establish the commission of the crime, and its perpetration by the defendant. Its scope and extent must be controlled by the trial judge, in the exercise of a wise discretion, and it would require a plain violation of the rights of a defendant to induce an appellate tribunal to reverse a conviction for an erroneous opening for the prosecution. What is said in an opening has no binding force, and it is designed only to give a general acquaintance with the case, to enable the jury to understand and appreciate the testimony as it falls from the lips of the witnesses.”
 

 The record does not show that any injury to defendant resulted from the overruling of his objection by the trial judge.
 

 Bill of Exception No. 11.
 

 During the cross-examination of a defense witness, the district attorney read from a statement allegedly made by the witness and then asked him whether the statement was true or false. To this counsel for defendant objected on the ground “that it was irrelevant and immaterial and on the ground that the proper foundation had not been laid, and on the ground that the statement and the testimony of the witness were not contradictory, and that it .was an improper attempt on the part of the District Attorney to disregard the witness’s testimony and to prejudice the witness’s testimony before the jury”. The trial judge overruled the objection, and counsel for defendant reserved this bill.
 

 In his per curiam the trial judge states that this bill “was taken to the State’s cross-examination of the witness Riley Strother by reading from a statement which Riley Strother admitted he had signed prior to the trial date. This-was clearly proper cross-examination to test the credibility of the-witness”.
 

 Counsel for defendant do not point out to this court any way in which the examination of the witness or the testimony sought to be elicited was irrelevant and immaterial, and we are unable to determine from the-record at what this obj ection is aimed.
 

 That part of defendant’s objection in which they use the expression on the “ground that the proper foundation had not been laid” we take to mean that- the proper-foundation had not been laid for the impeachment of the .witness, as provided in-. Article 493 of the Code of Criminal Procedure. This article provides:
 

 “Whenever the credibility of a witness is; to- be impeached by proof of any statement made by him contradictory to his testimony,, he must first be asked whether he has made-such statement, and his attention must be-called to the time, place and circumstances,, and to the person to whom the alleged statement was made, in order that the witness, may have an opportunity of explaining that which is prima facie contradictory. If the-witness does not distinctly admit making, such statement, evidence that he did make it. is admissible.”
 

 The record does not disclose whether or not the statement from which the district, attorney was reading was ever offered in. evidence, and the trial judge, in permitting the examination, states, as above set forth,, that the same was proper cross-examination, to test the credibility of the witness.
 

 
 *831
 
 In State v. Dunn, 161 La. 532, 109 So. 56, 68, this court stated the rule as follows:
 

 “The rule is ‘that where the cross-examination is merely for the purpose of testing credibility, a question as to an inconsistent statement need not specify time, place or persons present. * * * ’ 40 Cyc. p. 2717. The question does not arise as to whether a proper foundation has been laid to show that a witness has made contradictory statements until an effort is made to contradict him by showing by another witness that he has made such statements, and if such effort be made, it is then that the impeaching question cannot be put unless the proper foundation has been laid. State v. Lemond, 141 La. 306, 74 So. 1004. See, also, State v. Simon, 131 La. 520, 59 So. 975; State v. Guy, 107 La. 573, 31 So. 1012; State v. Wiggins, 50 La.Ann. 330, 23 So. 334.”
 

 In State v. Lyons, 113 La. 959, 37 So. 890, 893, a witness for the defense, under cross-examination by the district attorney, was asked: “Didn’t you make the statement that you had a party fence alongside of his (accused’s) place or lot, and that the man worried you so much that you had to give up the lot, because of his malicious ways?” Defendant objected to this on the ground “that the state was attempting to contradict the witness, and must state the time, place, and person to whom the statement was made.” This court held that the objection was based upon an assumption which did not appear to have been supported by fact, since it was not suggested that the State thereafter made any attempt to contradict- or impeach the witness, and was properly overruled as premature.
 

 It is also to be noted in the testimony attached to this bill that the trial judge granted to the witness the right to make explanations of the whole statement in question or any part thereof. However, conceding for the sake of argument that the purpose, of the question was to impeach the witness, we are unable to say from the record whether the State attempted to, or did, impeach the witness. Nevertheless, since the trial judge states that the witness admitted that he had, prior to the date of the trial, signed the statement from which the district attorney was reading, and since the portion of the statement read, as disclosed by the record, in its beginning shows that it was made in the form of an affidavit before a notary public, the “undersigned authority”, on September 30, 1944, we are of the opinion that the reading of the statement, together with the question, may possibly have been sufficient to direct the attention of the witness to the time, place, and circumstances of his making the statement and to the person or persons to whom it was made.
 

 Be this as it may, we think thát the examination was proper, being solely for the purpose of testing the credibility of the witness, and that it did not matter, under the facts presented by this bill, whether a proper foundation for his impeachment had or had not been laid.
 

 The testimony of the witness on direct examination not being in the record, we are unable to say whether or not the same was contradictory, or in what way, if any, the district attorney attempted to disregard his
 
 *833
 
 testimony given on direct examination and to prejudice the witness’s testimony before the jury.
 

 Bill of Exception No. 12.
 

 This hill was reserved to the overruling of an objection made by defendant to the request by the district attorney that the testimony of Riley Strother, a defense witness on cross-examination, he taken down by the court reporter. The objection was made on the ground that the district attorney’s request was improper and had prejudicial effect on the jury.
 

 From a reading of the bill, we do not know and cannot discover what was the purpose of the request; whether the district attorney attempted to, or did, intimidate the witness; the manner in which the request was made; the circumstances surrounding it; the attitude of the witness and of the district attorney, or any other facts in connection therewith.
 

 Counsel for defendant cite, and rely on, the cases of State v. Williams, 124 La. 779, 50 So. 711, and State v. White, 206 La. 744, 20 So.2d 10, 13. Those cases are not in point.
 

 In the Williams case, the defendant urged as a reason for reversal the fact that the district attorney intimidated witnesses by threatening to have them arrested for perjury if they did not tell the truth, and that one of defendant’s witnesses was arrested for that offense at the instance of the district attorney at the moment he finished testifying, in the presence of, and to the knowledge of, the jury, and to the knowledge of other witnesses who had not yet testified. This court there stated that the arrest of a witness in the presence of, and to the knowledge of, the jury is cause sufficient to reverse a verdict, but that the statement of the district attorney was made prior to trial, and that it did not appear that tlie jury had knowledge of the arrest of the witness, as every precaution was taken to keep the matter quiet, and that the evidence did not admit of the conclusion that anything was done to influence the jury improperly or intimidate the witnesses.
 

 In State v. White, upon the request of the district attorney the jury was withdrawn from the courtroom, and during its absence the district attorney informed a witness for the defense that “The State of Louisiana, through its representative, the District Attorney, desires to make an announcement to this witness and the Court and Counsel for the defendant that the State desires this witness to testify to actual truthful facts and nothing else and desires ment which can be positively refuted by to warn this witness if he gives any state-other evidence that the State of Louisiana will take the proper action against him in the matter”.
 

 This court held that, since the jury was out of the courtroom, the only possible prejudice the defendant in that case could have suffered would have been through an attempt to intimidate the witness, and that it was apparent from the nature of his testimony that the witness was not intimidated, for he testified and made the statement which he was placed upon the stand to make.
 

 
 *835
 
 In the case at bar, to justify our setting aside the verdict of the jury, approved by the trial court, on the ground that the testimony of the witness was taken down by the court reporter at the simple request of the district attorney, we would have to be thoroughly convinced that the jury was influenced by such request, and that such request contributed to the verdict. The district judge heard the request made and knew all the circumstances and facts in connection therewith, and observed the jury, and, if he had thought that the verdict was unjust and had been influenced by this request on the part of the district attorney, we would be slow to believe that he would have let the verdict stand.
 

 For the reasons above assigned, the verdict of the jury and the sentence of the court are affirmed.
 

 HIGGINS, J., takes no part.