*338
 
 LeBLANC, Justice.
 

 On February 11, 1948 a Grand Jury for the Parish of Sabine returned an indictment in the district court of that parish charging the defendant with the crime of manslaughter. He was tried on that indictment on February 18, 1948 and a verdict of negligent homicide was returned by the jury which had been impaneled to hear his case. Upon being sentenced to the State Penitentiary he appealed to this Court. On the appeal the conviction and sentence were set aside on June 15, 1948 and the case was remanded to the lower court for a new trial. See 214 La. 81, 36 So.2d 645.
 

 On the remand to the district court, the defendant was arraigned on February 13, 1950 on the same indictment and he was orally informed by the trial judge that he would be tried under the charge of negligent homicide. . At the arraignment the defendant stood mute whereupon the court ordered a plea of “not guilty” to be entered. His counsel objected to and protested the arraignment for the reason that there was no written charge accusing him of negligent homicide; that negligent homicide was not a responsive verdict to, nor could it be embodied in a charge of manslaughter. The objection was overruled and the defendant was ordered to stand trial. His case was fixed for trial on February 20, 1950, before a jury of five.
 

 On the day of trial, after the jury had been impaneled, when it became time for the reading of the indictment and the plea, the Clerk of Court stated to the jury that the defendant stood “charged before the court with the charge of negligent homicide in words and figures as follows, to wit:” He then proceeded to read the indictment for manslaughter and also read the former verdict of negligent homicide which was endorsed on the back of it. To all of this, counsel for defendant objected. The objection was overruled and the trial was proceeded with. The defendant was again found guilty of negligent homicide and upon being sentenced by the Court to serve a term in the State Penitentiary he took this appeal.
 

 The record presents 15 bills of exception for the Court’s consideration. The first four, however, are all grouped, together as they all relate to the defendant’s objections and protests to having been forced to trial under the original indictment under which he was charged with the crime of manslaughter. The contention made is that a verdict of negligent homicide being no longer a responsive verdict to an indictment for manslaughter by reason of the amendment to article 386 of the Code of Criminal Law and Procedure by Act No. 161 of 1948, it was necessary that defendant be re-indicted for negligent homicide before he could be charged with and made to stand trial for that crime.
 

 There is no merit in the contention. With the only difference being with regard to
 
 *340
 
 the crime with which the accused stood indicted and whatever application-Act No. 161 of 1948 may have in this case, the case of State v. Smith, 49 La.Ann. 1515, 22 So. 882, offers a complete parallel. In that case the indictment was for murder. The defendant was found guilty of manslaughter. On having been granted a new trial, he was presented before the -court on the previous indictment for murder with the explanation to the jury by the district attorney and the court, which was found necessary, of the modification in the situation resulting from the effect of the former verdict. “Neither law nor jurisprudence”, remarked the court, “requires that he could only legally be tried on a new indictment charging manslaughter.” We 'have only to -change the word “manslaughter” to the words “negligent homicide” and we have exactly the same situation.
 

 Act No. 161 of 1948 which the defendant invokes as his right to be re-indicted did not produce the effect that is claimed by him. All that it did was to list all the verdicts that are responsive to an indictment for a certain specific crime and in that respe-ct, it amended Article 386 of the Code of Criminal Procedure with regard te responsive verdi-cts to indictments, among others, for murder, manslaughter and negligent homicide. Whereas before the amendment a verdict of negligent homicide was responsive to an indictment for manslaughter, afterwards it was not, and the only responsive verdicts to an indictment for negligent homicide became “guilty as charged” and “not guilty.” But it was distinctly shown in State v. Williams, 216 La. 419, 43 So.2d 780, that the act is merely procedural -and that it does not purport to declare what acts are crimes or prescribe the punishment for committing them.
 

 In that -case the events giving -rise to the proceeding had taken place before the act went into effect and the issue that was presented to the court was whether’the judge should have instructed the jury with regard to responsive verdicts under its provisions, or under the law as it existed -before, and it was held that inasmuch as the act “has relation to nothing more than the co-u-rse of the trial proceeding” he had properly instructed the jury under its provisions notwithstanding the fact that the crime for which the defendant was being prosecuted had taken place before it went into effect.
 

 In this case the jury was fully informed of the situation. They were told by the trial judge that -although the indictment was for manslaughter the defendant had been acquitted of that crime by the former verdict and that he now stood charged with and was being tried for negligent homicide. Upon submitting the case to them he instructed them that the two verdicts that were responsive in the case were “guilty of negligent homicide” and
 
 *342
 
 “not guilty”, all in accordance with Act No. 161 of 1948. This was the correct and proper procedure to be followed and we hold that there was no reversible error committed as contended under these several bills of exception.
 

 Bill of Exception No. 5 was reserved to the ruling of the trial judge in refusing defendant’s request for a jury of 12 instead of 5. This bill was abandoned in oral argument before the court. However it has no merit in view of the holding in State v. Wooten, 136 La. 560, 67 So. 366, which serves as authority on this point.
 

 Bill of Exception No. 6 was taken and reserved to the reading of the indictment, with the former verdict endorsed thereon, by the Clerk of Court to the jury. This bill bears a close relation to the first four bills of exception and it has no merit. See State v. Smith, supra, holding that an accused does not have to be indicted where a new trial has been ordered but may be tried on the old indictment but only for the lesser crime for which the jury had convicted him.
 

 Bill of Exception No. 7 was reserved to the trial judge’s instructions to one of the prospective jurors in regard to the rights of the defendant on a plea of self defense when such plea was not being urged. In his per curiam, the trial judge states that he misunderstood the question which the attorney had. asked the prospective juror sincg he was speaking in a very low tone of voice, but that after the objection of counsel, he verbally instructed the jurors who had been chosen that they were to disregard any statement made by the court on a plea of self defense. This bill is without merit.
 

 Bill of Exception No. 8 had reference to the statement by the district attorney that the defendant had been previously convicted 'by a jury for the crime of negligent homicide. This bill -also is connected with the first four bills of exception.. It was shown that the defendant’s rights were protected by proper explanations made to the jury and the judge’s instructions as to the verdicts they could render.
 

 Bill of Exception No. 9 has reference to a remark of the 'district attorney in his opening statement to the jury. He is quoted as having stated: “I expect to show that while this defendant, E-mmitt Crittenden,, was in jail, Mr. Allen Lewing, who owns- ■and operates a store in Ward 1, went to see him about a bill that this defendant owed him, that at that time the defendant voluntarily stated to Mr. Allen Lewing that he was the party that killed Willis Lee but that he did not do it intentionally.”
 

 The defendant objected and excepted for the reason that such statement as was reported to have been made by the defendant constituted part of an alleged confession which this court, in reviewing the former conviction of this defendant, 214 La. 81, 36 So.2d 645, held had not been freely and voluntarily made.
 

 
 *344
 
 In hi? per curiam, the trial judge states that. it was proper for the district attorney to outline in his opening statement what he expected to prove that when he sought to introduce testimony relating to the statement complained of, he ruled that it should be excluded. He -also instructed the jury to disregard any remarks that may have been made by the district attorney as far as they were inconsistent with the evidence that had been introduced. In view of the ruling by this court in the former case, we think that it certainly was improper for the district attorney to make any statement to the jury which had 'any bearing on the purported confession, and had the matter been left to stand, even with the exclusion of the testimony, without further instructions from the trial judge there may have been reversible error committed. However the instructions given to the jury by the trial judge had the effect of removing any prejudice that may have arisen in their minds as a result of the district attorney’s remarks.
 

 Bill of Exception No. 10 was reserved to the testimony of one C. S. M-assingill, a licensed undertaker, with regard to the condition of the corpse, it being contended that this witness was not qualified as an expert to testify regarding such matters. In his per curiam the trial judge -states that the witness did not give any opinion testimony but he. merely stated facts regarding what he saw, the same as ■any other, layman would have been permitted to do. The bill has no' merit.
 

 Bill of Exception No. 11 was reserved when the jury was permitted to take to the jury room with them the indictment with the former verdict endorsed on the back of it. The trial judge however instructed the jury that they were not to be influenced by any act or finding by the grand jury or any former petit jury and were to totally disregard any findings by either. He instructed them to try and decide the case solely on the evidence adduced during the .trial -and to apply the law as given to- them by the court. He also, commented on the fact that the jury consisted of men above normal intelligence. This bill, likewise, is without merit.
 

 Bill of Exception No. 12 was reserved to the testimony of a witness for the State, Henry McClelland, on the ground that the district attorney, in his opening statement, did not inform the jury what he expected to prove by this or any other witness regarding any statement alleged to have been made by defendant as to where the deceased had gone after he had disappeared from the home where he and the defendant -had been living together. In his per curiam the trial judge states that the whole of the district attorney’s opening statement was not taken down because counsel for the defendant had not so- requested but that he was of the opinion that the opening statement was broad enough to
 
 *346
 
 include the evidence to be elicited from this witness. We find no merit in this bill.
 

 Bill of Exception No. 13 relates to the trial judge’s refusal to grant a new trial on the ground that one of the jurors had expressed prior to the trial that he had a definite opinion and had expressed himself as to the guilt or innocence of the accused. We think that the following statement taken from the trial judge’s per curiam disposes of this bill: “A reading of the testimony of Mr. McCorkel taken on a hearing had in connection with the motion filed will show that he had formed no opinion as to the guilt or innocence of the accused. The court knows Mr. McCorkel and knows him to be truthful and honest. We are of the opinion that McCorkel had no interest in the case whatsoever other than to do his duty -as a juror as he saw it. He had certainly formed no opinion that would disqualify him as a fair and competent juror.”
 

 Bills of Exception No. 14 and No. 15 were reserved to the denial of a motion for a new trial and a motion in arrest of judgment. They merely re-urge all the points involved and the errors alleged in the preceding bills and it is unnecessary, therefore, for us to say any more than we find no merit in either of them.
 

 For the reasons assigned, the sentence and conviction appealed from are affirmed.
 

 HAMITER, J., dissents from the denial of defendant’s application for a rehearing.